UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

INTEGRICO COMPOSITES, INC.         *     CIVIL ACTION NO.  15-02788

VERSUS                             *     JUDGE S. MAURICE HICKS

SOUTHLAND PROCESS GROUP,           *     MAG. JUDGE KAREN L. HAYES
LLC

REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a

motion to dismiss [doc. #8] and a renewed motion to dismiss [doc. #33] filed by Defendant

Southland Process Group, LLC ("SPG").  For reasons explained below, it is recommended that

the Motions be **DENIED**.

Background

On December 3, 2015, Plaintiff IntegriCo Composites, Inc. ("IntegriCo") filed a breach of

contract claim against Defendant SPG. [doc. # 1].  On December 10, 2014, IntegriCo and SPG

(collectively the "Parties") contracted for the construction of a railroad tie production facility in

Springhill, Louisiana. *Id.* Exh. A (the "Agreement"). Plaintiff alleges that Defendant breached

the Agreement by, *inter alia*, failing to complete the facility in a timely manner and abandoning

the project on October 26, 2015. *Id.* ¶ 7. IntegriCo seeks a declaratory judgment that SPG has

breached the Agreement and resulting damages. *Id*. ¶ 8.

Plaintiff asserts that jurisdiction is proper in this Court under 28 U.S.C. § 1332. *Id.* ¶ 1. In

its Complaint, Plaintiff claims that the parties are completely diverse because SPG is a citizen of

Georgia and IntegriCo is a citizen of Delaware and Texas. *Id.* Therefore, because the matter in

controversy exceeds the sum or value of $75,000[1] and is between citizens of different states, Plaintiff claims that jurisdiction is proper. *Id.*

SPG filed the instant motion to dismiss on January 29, 2016. [doc. # 8]. First, SPG argues that jurisdiction under 28 U.S.C. § 1332 is improper, as both Parties are citizens of the state of Louisiana, and thus, are not completely diverse. *Id.* at 1. Second, SPG argues that contractually agreed upon conditions precedent to filing this lawsuit have not been satisfied, and therefore, the Complaint must be dismissed for failure to state a claim for which relief can be granted. *Id.* at 1-2. IntegriCo filed its opposition memorandum on March 1, 2016. [doc. # 14]. On March 8, 2016, SPG filed its reply [doc. # 17], as well as a motion to stay the case and to conduct limited discovery on the issue of whether diversity jurisdiction exists. [doc. # 16]. On April 4, 2016, IntegriCo filed its opposition memorandum. [doc. # 21]. On May 5, 2016, the undersigned granted SPG's motion to stay and conduct limited discovery [doc. # 24], and the Parties filed supplemental memoranda on August 1, 2016. [docs. # 27, #29]. On August 3, 2016, Plaintiff filed an Amended Complaint [doc. #32], and on August 8, 2016, Defendant filed a renewed motion to dismiss [doc. #33]. Thus, the matter is ripe.

<u>**Discussion**</u>

**I.      Rule 12(b)(1) Standard**

A federal court has original jurisdiction over civil actions between citizens of different States where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of*

---

[1] It is undisputed that the amount in controversy exceeds $75,000. Thus, the only issue is whether complete diversity exists. *See* doc. #1, ¶ 1.

*Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)).  Motions filed under Federal Rule of Civil Procedure 12(b)(1) "allow a party to challenge the subject matter jurisdiction of the district court to hear the case." *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001). The burden of proof is on the party asserting jurisdiction. *Id.* "In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider . . . the jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161. Thus, the Court will consider SPG's jurisdictional arguments first.

## II.     Jurisdictional Analysis

In its Complaint, IntegriCo claims that the parties are completely diverse, and therefore, that jurisdiction is proper, because SPG is a citizen of Georgia and IntegriCo is a citizen of Delaware and Texas. [doc. #1, ¶ 1]. In its memorandum in support of dismissal, SPG asserts that IntegriCo and SPG are both citizens of Louisiana, and thus, complete diversity is not met. [doc. #8, p. 1]. In its reply, IntegriCo conceded that it was a citizen of Louisiana, as its principal place of business changed from Temple, Texas to Sarepta, Louisiana, shortly before this lawsuit was filed. [doc. #14, p. 4, n. 2]. Therefore, IntegriCo is a citizen of Delaware and Louisiana. *See* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."). As an LLC, SPG's citizenship is determined by the citizenship of all of its members. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008).

At issue in this case is whether Brian Arkwood, a current member of SPG, is a

3

domiciliary of Louisiana. Mr. Arkwood worked as an engineer for SPG starting in October, 2014. [doc. #8, p. 3]. On November 9, 2015, Mr. Arkwood resigned his employment with SPG and accepted employment with IntegriCo as Chief Technical Officer at its facility in Sarepta, Louisiana. Affidavit of Brian Arkwood, [doc. # 27, Exh 10]. Before moving to Louisiana, Mr. Arkwood had been a domiciliary of Atlanta, Georgia, for twelve years. Dep. Brian Arkwood, p. 29:20-25. The issue is whether, upon relocating to Louisiana for his new job, Mr. Arkwood changed his domicile from Georgia to Louisiana, rendering SPG a citizen of Louisiana. Plaintiff argues that Mr. Arkwood is not a citizen of Louisiana, and that he merely resides there for work on a temporary basis. [doc. #14, p. 4]. Defendant argues that Mr. Arkwood became a domiciliary of Louisiana when he moved there on November 15, 2015—two weeks before the complaint was filed—to work at IntegriCo's Sarepta facility. [doc. #8, p. 4].

The Court must look to the date the complaint was filed to determine the citizenship of the parties. *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 574-75 (2004). The party seeking to prove a change in domicile must come forward with evidence demonstrating "the concurrence of: (1) physical presence at the new location and (2) an intention to remain there indefinitely". *Coury v. Prot*, 85 F.3d 244, 250 (5th Cir. 1996) (citations omitted). Intent to remain indefinitely means "the absence of any intention to go elsewhere." *See id.* "A person's domicile persists until a new one is acquired or it is clearly abandoned." *Id.* (citing *Lew v. Moss*, 797 F.2d 747 (9th Cir. 1986); *Mas v. Perry*, 489 F.2d 1396 (5th Cir. 1974), *cert. denied*, 419 U.S. 842 (1974)). "There is a presumption in favor of the continuing domicile which requires the party seeking to show a change in domicile to come forward with enough evidence to that effect to withstand a directed verdict." *Id.* (citing *Lew*, 797 F.2d at 751).

In determining a litigant's domicile, the court must address a variety of factors. No

4

single factor is determinative. The court should look to all evidence shedding light on the litigant's intention to establish domicile. The factors may include the places where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family.

*Id.* at 251.

The Court finds that Mr. Arkwood is domiciled in Georgia. Mr. Arkwood has repeatedly stated that he never intended to remain in Louisiana indefinitely. Affidavit of Brian Arkwood [doc. # 27, Exh 10, p.1]; Dep. Brian Arkwood, pp. 72: 9-25, 73:1-6; 73: 20-22. Mr. Arkwood stated that he intended to remain in Sarepta, Louisiana, only until the IntegriCo facility there was brought up to capacity, at which point he would then move to another IntegriCo facility. Dep. Brian Arkwood, pp. 38:13-17; 39:8-16, 22-25; 42: 6-12; *see Mas*, 489 F.3d at 1399 (despite no intention of returning to her parents' home in Mississippi, plaintiff's domiciliary remained Mississippi because she moved to Louisiana for school and lacked intent to remain there). He further testified that he expected to move to a series of locations temporarily, and that his relocation to Louisiana was temporary. Dep. Brian Arkwood, p. 73:2-19. When Mr. Arkwood was initially offered the job with IntegriCo, he emailed his former girlfriend Michelle Walawender that he intended to move to Louisiana "for at least the next year then move to [IntegriCo's] new corporate office (site TBD) or the flagship facility which plans to be in Oregon." [doc. #27, Exh. 4]; E-mail from Brian Arkwood to Michelle Walawender (Nov. 2, 2015, 8:05 PM). While Mr. Arkwood is unaware of when he would move back to Georgia, he testified that he plans to return for a period of time after the Louisiana facility is brought up to

speed. Dep. Brian Arkwood, p. 36: 16-19; *see Holmes v. Sopuch*, 639 F.2d 431, 433-34 (8th Cir. 1981) ("A person must intend to reside somewhere indefinitely with no present or fixed intent to move on upon the happening of a reasonably certain event.").

Additionally, upon reviewing the *Coury* factors, the objective facts in this case support Mr. Arkwood's testimony that he did not intend to change his domicile from Georgia to Louisiana. *See Coury,*85 F.3d at 251 ("A litigant's statement of intent is relevant to the determination of domicile, but it is entitled to little weight if it conflicts with the objective facts."); *Washington v. Hovensa LLC*, 652 F.3d 340, 346-47 (3d Cir. 2011) (noting that an admittedly self-serving affidavit is entitled to "full and fair consideration" where the affidavit is buttressed by course of conduct). Mr. Arkwood owns and continues to maintain a house in Atlanta, Georgia. He continues to pay all bills associated with the home, including the utilities, cable, water, gas and internet. Dep. Michelle Walawender, p. 9:1-15; [doc. #15, Exh. B]. He allows his former girlfriend, Ms. Walawender, to live in the house rent free so, among other reasons, "the house will be kept up for when I return." Dep. Brian Arkwood, pp. 34:2-4; 36: 14-15. While in Louisiana, Mr. Arkwood has paid for necessary repairs on the Georgia home, including a leaky roof and a broken water heater. Dep. Michelle Walawender, pp. 28:19-25, 29:1-13. He still receives mail at his Georgia home. Dep. Michelle Walawender, p. 30:14-16. Mr. Arkwood brought clothing, a bedroom set and some living room and office furniture to Louisiana, but many personal items, including furniture, tools, childhood memorabilia, clothing, and his grill, still remain at his Georgia home. Dep. Brian Arkwood, pp. p. 26:9-11; 32:22-23; Dep. Michelle Walawender, p. 10:11-19. Mr. Arkwood filed 2015 tax returns in both Georgia and Louisiana. Dep. Brian Arkwood, p. 14:4-20. His vehicle is registered in Georgia, and he still holds a Georgia driver's license. *Id.* at p. 49: 2-5, 17-19; [doc. #15, Exh. C]. Mr. Arkwood is still

eligible for jury duty in Georgia, as he was summoned to appear for service on March 9, 2016. [doc. #15, Exh. D]. Mr. Arkwood has not opened any local bank accounts in Louisiana. Dep. Brian Arkwood, p. 70: 21-23.

The only objective evidence that SPG has presented to indicate that Mr. Arkwood intended to remain in Louisiana indefinitely is the fact that he moved there for a job, leased a home for twelve months, and has no concrete plans to leave yet because the location of IntegriCo's new corporate office (where Mr. Arkwood intended to move after bringing the Sarepta facility up to capacity) is still to be determined.[2] Dep. Brian Arkwood, pp. 39:15-18; 42:13-21. Indeed, Mr. Arkwood still resides in Sarepta, Louisiana. *Id.* at p. 45: 4-8.

SPG contends that Mr. Arkwood's leasing a home in Louisiana "clearly demonstrate[s]" that he intended to remain in Louisiana. [doc. #17, p. 6]. SPG incorrectly conflates the terms "residency" and "domicile".[3] The Supreme Court has made clear that "domicile" is not synonymous with "residence". *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989). One can reside in one place but be domiciled in another. *Id*; *see Coury*, 85 F.3d at 250 ("Mere presence in a new location does not effect a change of domicile; it must be accompanied with the requisite intent."). Thus, residing in Louisiana does not prove that Mr. Arkwood intended to remain in Louisiana when this complaint was filed.

SPG also argues that Mr. Arkwood's employment cannot be "some sort of short-term

---

[2] It is irrelevant if Mr. Arkwood later decided to remain in Louisiana, for work or otherwise, because diversity is established at the commencement and removal of a lawsuit. *Coury*, 85 F.3d at 249. Diversity is not destroyed by subsequent changes in the citizenship of the parties. *Id*; *Grupo Dataflux*, 541 U.S. at 570.

[3]*See* doc. #27, pp. 6, 11 (arguing that one of Mr. Arkwood's statements is "fatal to IntegriCo's position on the issue of residency," and stating, "In fact, Arkwood stated on December 3, 2015, he was residing in Louisiana.").

assignment" because his salary is calculated on an annual basis; he receives annual performance evaluations; he was invited to participate in IntegriCo's 4-year Stock Option Plan; and he was offered performance-based bonuses that would take years to accomplish. [doc. #17, pp. 6-7]. This argument is not on point. During his deposition, Mr. Arkwood admitted that he is pursuing permanent employment with IntegriCo. Dep. Brian Arkwood, p. 47:3-8. This is evidenced by his many statements that he intends to move to another IntegriCo facility once the Sarepta facility is brought up to capacity. However, the precise question is not whether, when this lawsuit was filed, Mr. Arkwood intended to be employed with IntegriCo indefinitely; it is whether he intended to remain in Louisiana indefinitely. Thus, the mere fact that he may have accepted long-term employment with IntegriCo does not necessarily indicate an intent to remain in Louisiana indefinitely.

Lastly, SPG argues that Mr. Arkwood is not a domiciliary of Georgia because he cannot state when he actually intends to return there. [doc. #17, p. 4]. However, in *Coury v. Prot*, the Fifth Circuit held that the defendant remained a domiciliary of Texas, even though he moved his family to France for a business opportunity and did not know when he would return, because the defendant maintained his family home in Texas, expressed an intent to return there, and lacked any intention to remain in France or abandon his Texas home. 85 F.3d at 248, 251. Similarly, Mr. Arkwood has consistently maintained that he moved to Louisiana temporarily for work, and that he never intended to remain in Louisiana, or abandon his Georgia home. Dep. Brian Arkwood, pp. 72: 9-11; 72: 24-25, 73:1-6. While he is unaware of when he will be returning to Georgia, he maintains his Georgia home, pays all related bills, and has testified that he intends to return to

Georgia or move elsewhere once his job in Louisiana is finished. *Id.* at p. 36:16-19.[4]

The Court finds that the objective evidence as analyzed under the *Coury* factors, as well as Mr. Arkwood's testimony, supports the finding that Mr. Arkwood did not intend to remain in Louisiana indefinitely when he moved there in November, 2015. Therefore, for purposes of subject matter jurisdiction, SPG is domiciled in Georgia, and IntegriCo is domiciled in Louisiana and Delaware, resulting in the parties' complete diversity. It is recommended that SPG's motion to dismiss, and renewed motion to dismiss, for lack of subject matter jurisdiction be **DENIED**.

Even if this Court has subject matter jurisdiction, SPG argues that the Complaint must be dismissed for failure to state a claim for which relief can be granted because IntegriCo did not follow contractually agreed upon negotiation procedures before filing this instant action, and therefore, the lawsuit is premature. [doc. #8, pp. 1-2]. IntegriCo argues that it complied with the prerequisites to filing suit and that the case is not premature. [doc. #14, p. 8].

## III.    Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." FED.R.CIV.P. 12(b)(6).  A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." FED.R.CIV.P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

---

[4] SPG further contends that Mr. Arkwood is not a domiciliary of Georgia because he has only returned to his Georgia home once since November, 2015. [doc. #17, p. 8]. Mr. Arkwood's absence from Georgia does not work a change in domicile. "Mere absence from a fixed home, however long continued, cannot work the change [in domicile]. There must be animus to change the prior domicile for another. Until the new one is acquired, the old one remains." *Welsh v. Am. Sur. Co. of N.Y.*, 186 F.2d 16, 17 (5th Cir. 1951).

U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  Plausibility is not akin to probability; plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Plausibility calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim.  *See Twombly*, 550 U.S. at 556.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.2d 673, 675 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). But a pleading comprised of  "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Iqbal*, 556 U.S. at 681.

## IV.    Contract Provision Analysis

SPG argues that, prior to filing this lawsuit, IntegriCo did not follow the pre-litigation negotiation steps mandated in the Agreement. [doc. #8, p. 6]. Specifically, SPG claims that IntegriCo did not provide formal written notice of any potential dispute. *Id.* at 7. SPG further claims that executives of both Parties never met to discuss and potentially resolve the dispute, and that IntegriCo never responded to SPG's meeting requests, as required by the Agreement. *Id.* IntegriCo contends that the Agreement does not mandate a meeting before filing suit. [doc. #14, p. 8]. IntegriCo argues that the only prerequisite to filing suit is providing the other Party with written notice of the dispute more than 30 days before filing, and that it complied with this requirement. *Id.*

Article 18 of the Agreement states:

Section 18.1    <u>Dispute Resolution</u>

10

(a)    Any claim dispute or matter in question between Owner and SPG arising out of or related to the Work or this Agreement, shall be resolved pursuant to this <u>Article 18.</u>

(b)    <u>Step Negotiations.</u> The Parties shall attempt in good faith to resolve all disputes promptly by negotiation, as set forth below. Either party may give the other Party written notice of any dispute not resolved in the normal course of business. Executives of both Parties at levels one level above the Facility personnel who have previously been involved in the dispute shall meet at a mutually acceptable time and place within ten (10) Days after delivery of such notice, and thereafter as often as they reasonably deem necessary, to exchange relevant information and to attempt to resolve the dispute. If the matter has not been resolved within thirty (30) Days from the referral of the dispute to senior executives, or if no meeting of senior executives has taken place within fifteen (15) Days after such referral, either Party may initiate litigation as provided herein. . . . If the Parties are not able to reach agreement on the settlement of a dispute within the time periods set forth above, either Party shall have the right to seek any and all rights and remedies available to it at law or in equity.

(c) Pending final resolution of any dispute, Owner and SPG shall continue to fulfill their respective obligations hereunder and Owner shall continue to pay SPG any undisputed amounts in accordance with the terms of this Agreement, except to the extent expressly provided in this Agreement.

(d) **EACH OF THE PARTIES HEREBY KNOWINGLY,**

11

**VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHTS IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY DISPUTE OR CONTROVERSY BETWEEN OR AMONG SUCH PARTIES BASED HEREON OR ARISING UNDER OR IN CONNECTION WITH THIS AGREEMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER ORAL OR WRITTEN), OR ACTIONS OF THE PARTIES. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE PARTIES TO ENTER INTO THIS AGREEMENT.**

(doc. #1, Exh. A).

Per the Agreement's Choice of Forum provision, Louisiana state law applies to this dispute. *Id.* § 20.4.[5] To determine Louisiana law, federal courts look to the final decisions of the Louisiana Supreme Court. *Wisznia Co. v. Gen. Star Indem. Co.*, 759 F.3d 446, 448 (5th Cir. 2014) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007)). In the absence of a decision by the Louisiana Supreme Court, federal courts predict how, in their best judgment, the Louisiana Supreme Court would decide the question. *Id.* In doing so, the court must keep in mind  Louisiana's civil law tradition, first examining primary sources of law—the constitution, codes, and statutes—because jurisprudence is a secondary law source in Louisiana. *Id.* (quoting *Prytania Park Hotel, Ltd. v. Gen. Star Indem. Co.*, 179 F.3d 169, 175 (5th Cir. 1999)). Accordingly, while federal courts will not disregard Louisiana intermediate appellate courts "unless we are convinced that the Louisiana Supreme Court would decide otherwise,"

[5] Governing Law; Choice of Forum. This Agreement shall be governed by, interpreted under, and construed and enforced in accordance with the laws of the State of Louisiana without regard to its conflict of laws or provisions. [doc. #1, Exh. A, § 20.4].

federal courts are not strictly bound by them. *Id.* (citing *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 261 (5th Cir. 2003)).

The Louisiana Civil Code provides, "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA. CIV. CODE art. 2046 (1985). When a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under pretext of pursuing its spirit. *Maloney v. Oak Builders, Inc.*, 256 La. 85, 98 (1970). The Court finds that the terms of the dispute resolution provision in the Agreement are unambiguous. It states, "If the matter has not been resolved within thirty (30) Days from the referral of the dispute to senior executives, or if no meeting of senior executives has taken place within fifteen (15) Days after such referral, either Party may initiate litigation as provided herein." [doc. #1, Exh. A, § 18.1(b)]. Per the plain language of the Agreement, either Party may initiate litigation as long as a referral to senior executives is made, and the dispute is not resolved within thirty days from said referral.

The final completion date under the contract was May 1, 2015. [doc. #14, Exh. 9]. The facility was not brought into production by that time, and SPG stopped work on building the facility altogether on October 26, 2015. [doc. #1, ¶ 7]. IntegriCo filed suit on December 3, 2015, claiming that SPG breached the Agreement by failing to: (1) bring the facility into production; (2) report to IntegriCo; (3) provide detailed labor accounting and oversight; (4) provide detailed and timely updates about costs and budget; (5) exercise good faith in the performance of the Agreement by intentionally misleading IntegriCo regarding the schedule for completion of the work; and by abandoning the job prior to completion. *Id.*

13

Attached to IntegriCo's memorandum in opposition are multiple emails between Todd Ballard, Chief Executive Officer (CEO) of SPG, and Scott Mack, CEO of IntegriCo, discussing the disputes in this case—mainly, that SPG failed to perform its end of the contract on time, that the facility was experiencing a legion of specification problems, and that IntegriCo owes SPG past due payments. These emails date back to September 28, 2015 (more than two months before the complaint was filed). [doc. #14, Exhs, 2, 3, 4, 5, 7, 8, 9]. Specifically, on September 28, Mr. Mack was informed of "several items [at the facility] noted as out of specification." [doc. #14, Exh. 2]. Mr. Mack then contacted Mr. Ballard, stating that he would not continue paying SPG's invoices "until I see contracted performance. When we do... and as we discussed...we will properly reconcile the final tally including damages against the 1 May contractual completion date." [doc. #14, Exh. 2]; Email from Scott Mack, CEO, IntegriCo, to Todd Ballard, CEO, SPG (Sept. 28, 2015, 12:10 PM). Mr. Ballard responded with an extensive email, assuring Mr. Mack that SPG will work with IntegriCo to "facilitate the resolution" of performance issues. [doc. #14, Exh. 2]; Email from Todd Ballard, CEO, SPG, to Scott Mack, CEO, IntegriCo (Sept. 29, 2015, 8:52 AM). It was Mr. Ballard's position, however, that SPG's vendors should be paid for work done and that payment was not conditioned on performance completion. [doc. #14, Exh. 4]; Email from Todd Ballard, CEO, SPG, to Scott Mack, CEO, IntegriCo (Oct. 23, 2015, 11:15 AM).

On October 6, 2015, Mr. Mack expressed his frustration with SPG and again refused to make any more payments, stating, "this is ridiculous in an on time / on schedule scenario. No additional funds will be released." [doc. #14, Exh. 3]; Email from Scott Matt, CEO, IntegriCO,

to Todd Ballard, CEO, SPG (Oct. 6, 2015, 7:26 PM). On October 23, 2015, Mr. Ballard again

demanded that SPG's vendors be paid uncontested amounts for work done, stating "[t]here is no

reason to not release the amounts I referenced in my email requesting payment of the August

invoice. A lot of work has been done and a lot of issues resolved since my email in September."

[doc. #14, Exh. 2]; Email from Todd Ballard, CEO, SPG, to Scott Mack, CEO, IntegriCo (Oct.

23, 2015, 11:15 AM). Mr. Mack again refused payment, stating that the facility's operations still

did "not correlate" with the commitments made by SPG. Email from Scott Mack, CEO,

IntegriCo, to Todd Ballard, CEO, SPG (Oct. 23, 2015, 12:09 PM).

Ultimately, after failing to resolve the matter, Mr. Ballard provided written notice to Mr.

Mack on October 27, 2015, that SPG was suspending performance due to lack of payment from

IntegriCo. [doc. #14, Exh. 7]; Letter from Todd Ballard, CEO, SPG, to Scott Mack, CEO,

IntegriCo (Oct. 27, 2015). IntegriCo offered SPG $851,848 in settlement, an offer that remained

open until November 10, 2015.[6] [doc. #14, Exh. 9]; Letter from Scott Mack, CEO, IntegriCo, to

Todd Ballard, CEO, SPG (Nov. 3, 2015).

As demonstrated by the above correspondence, it is abundantly clear that SPG had notice

of the underlying dispute by September, 2015.[7] The CEOs of both companies emailed multiple

times between September 28 and November 3, 2015, discussing and attempting to resolve the

issues in this case. This lawsuit was filed on December 3, 2015, more than thirty days after

---

[6] The Court presumes that this settlement offer was rejected, as neither SPG nor IntegriCo
has offered any evidence suggesting that SPG accepted.

[7] The Agreement does not specify what kind of notice is required.

referral to both Mr. Mack and Mr. Ballard, once discussion between the CEOs failed to resolve the matter. Thus, IntegriCo was in compliance with the Agreement's dispute resolution provision, and it is recommended that SPG's motions to dismiss for failure to state a claim for which relief can be granted be **DENIED**.

 **Conclusion**

For the above assigned reasons,

**IT IS RECOMMENDED** that Defendant's motion to dismiss [doc. #8], and renewed motion to dismiss [doc.#33], for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim for which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) be **DENIED**.

In Chambers, at Monroe, Louisiana, this 30th day of August, 2016.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

16